UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| BERKLEY NATIONAL INSURANCE COMPANY, an Iowa Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>THE LUBRIZOL CORPORATION, an Ohio Corporation, and SASU LUBRIZOL FRANCE, a French Business Entity<br><br>                    Defendant. | Case No.:<br><br>Judge:<br><br><br>**COMPLAINT FOR DECLARATORY JUDGMENT** |

Berkley National Insurance Company ("Berkley"), for its Complaint for Declaratory Judgment against The Lubrizol Corporation ("Lubrizol Corp.") and SASU Lubrizol France ("Lubrizol France") (collectively, "Lubrizol"), states as follows:

**THE PARTIES**

1.     Berkley is an insurance corporation organized and existing under the laws of the State of Iowa, with its principal place of business in Urbandale, Iowa.  Berkley is authorized to and is conducting business in the State of Ohio.

2.     Lubrizol Corp. is a corporation organized and existing under the laws of the State of Ohio, with its principal place of business in Wickliffe, Ohio.

3.     Lubrizol France is a French business entity organized and existing under the laws of France.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332 (a) because diversity of citizenship exists between Berkley, Lubrizol Corp. and Lubrizol France and the amount in controversy exceeds $75,000.00.

5.     This Court has personal jurisdiction over Lubrizol Corp. because Lubrizol Corp. is a citizen of the State of Ohio with its principal place of business in Wickliffe, Ohio.

6.     This Court has personal jurisdiction over Lubrizol France on two independent bases: general personal jurisdiction and specific personal jurisdiction.

7.     This Court has general personal jurisdiction over Lubrizol France due to Lubrizol France's continuous and systematic contacts with this jurisdiction, including through its continuous and systematic contacts with Lubrizol Corp., Lubrizol France's parent corporation.

8.     This Court also has specific personal jurisdiction over Lubrizol France under Ohio R.C. § 2307.382, Ohio's long-arm statute, which allows this Court to exercise personal jurisdiction "over a person who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this state."

9.     Lubrizol France has transacted business in this State, through its agent Lubrizol Corp., in procuring the insurance policy that is the subject of this complaint for declaratory judgment.  Lubrizol France has continued to transact business in this State, through its agent Lubrizol Corp., in pursuing insurance coverage under the subject insurance policy.  In fact, all relevant transactions and communications with Berkley on behalf of Lubrizol France in relation to the insurance policy and coverage at issue have been performed by Lubrizol France's agent, Lubrizol Corp., in this State.

10.    Due Process is satisfied because Lubrizol France has purposely availed itself of the privilege of conducting activities within Ohio, through its agent Lubrizol Corp.

11.    The Court may declare the rights and other legal relations of Berkley, Lubrizol Corp. and Lubrizol France pursuant to 28 U.S.C. § 2201 because an actual controversy exists between them within the jurisdiction of the Court.

12.     Venue is appropriate pursuant to 28 U.S.C § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District, including procurement of the insurance policy at issue, and further, the defendant Lubrizol Corp. has its principal place of business in this District.

**BACKGROUND**

**A.    The Rouen Fire and Resulting Pollution**

13.     On or about September 26, 2019 a fire occurred at or near a facility owned and/or operated by Lubrizol Corp. and/or its subsidiary Lubrizol France, in Rouen, France (the "Lubrizol Facility").

14.     The Lubrizol Facility and a neighboring facility operated by Normandie Logistique ("NL"), a logistics and transportation company, were damaged as a result of the Rouen Fire.

15.     The facilities that were damaged by the Rouen Fire included facilities that stored industrial chemicals, and Berkley understands that both the Lubrizol and NL facilities stored industrial chemicals owned and/or produced by Lubrizol at the time of the Rouen Fire.  According to reports, approximately 9,500 tons of chemicals burned in the Rouen Fire.

16.     In addition, other property owned by third-parties but under the care, custody or control of Lubrizol was purportedly damaged and/or destroyed in the Rouen Fire, including machinery leased to Lubrizol.

17.     While the blaze was ultimately controlled, toxic smoke and soot from the Rouen Fire allegedly spread over the region.  The plume of smoke from the Rouen Fire purportedly stretched 22 kilometers.

18.     As a result of the alleged toxic smoke and soot, schools and businesses were closed, and authorities banned the harvesting of crops and sale of agricultural products from the region in the weeks after the incident.

19.     Criminal and civil investigations into the cause or causes of the Rouen Fire are pending in France.

20.     Specifically, Lubrizol itself initiated a proceeding under Article 145 of the French code of civil procedure, which is in part directed to produce a court survey report, the focus of which may be the cause and origin of the Rouen Fire.  The court survey report may itself form the basis for a subsequent civil claim in which damages are alleged.

21.     While investigation into the cause or causes of the Rouen Fire remains pending in France, Lubrizol has made payments to various claimants in the region that claim they suffered pollution damage.

22.     Lubrizol's payments to claimants for claimed pollution damages due to the Rouen Fire occurs through an adjustment process administered by Lubrizol.

23.     The funds paid by Lubrizol respond to alleged claims of damage to agricultural products and land, businesses, public entities, and individuals in the region as a consequence of the claimed pollution resulting from the Rouen Fire.

24.     Lubrizol has paid hundreds of claims, while hundreds more remain unresolved.

**B.     Insurance Policies Issued to Lubrizol**

   **i.     The National Fire & Marine Policy**

25.     National Fire & Marine Insurance Company ("National Fire & Marine") issued to Lubrizol a Commercial Retained Limit Liability Policy under number 42-RLO-100184-04, effective March 15, 2019 to March 15, 2021 (the "National Fire & Marine Policy").

26.     The National Fire & Marine Policy reflects a $25 million per "occurrence" and general aggregate limit.

27.     The National Fire & Marine Policy provides in relevant part:

**I.     COVERAGES**

    **A.     Insuring Agreement**

        1.     We will pay on behalf of the "insured" those sums in excess of the "retained limit" that the "insured" becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this insurance applies or because of "bodily injury" or "property damage" to which this insurance applies assumed by the "insured" under an "insured contract".

                *          *          *

    **B.     Exclusions**

      …

      **j.     Damage to Property**

      This policy does not provide coverage for "property damage" to:

      (1)     Property

          (a)     You own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property; ...

      (2)     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

      (3)     Property loaned to you;

(4)     Personal property in the care, custody or control of the "insured";

(5)     That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; ...

**k.     Damage to "Your Product"**

This policy does not provide coverage for "property damage" to "your product" arising out of it or any part of it.

\*     \*     \*

## II.    DEFENSE PROVISIONS

**A.**    We will have the right and duty to defend any "suit" against the "insured" that seeks damages for "bodily injury", "property damage" or "personal and advertising injury" covered by this policy, even if the "suit" is groundless, false or fraudulent when the "retained limit" has been exhausted by payment of loss to which this policy applies.

If we are prevented by law or statute from assuming the obligations specified under this provision, we will pay any expenses incurred with our consent.

**B.**    We will have no duty to defend the "insured" against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

**C.**    When we assume the defense of any "suit" against an "insured" that seeks damages covered by this policy, we will:

1.     Investigate, negotiate and settle the "suit" as we deem expedient; and

2.     Pay "defense expenses".

**D.**    Except as provided in Paragraph A. above, we will have no duty to defend any "suit" against the "insured".  We will, however, have the right, but not the duty, to participate in the defense of any "suit" and the investigation of any claim to which this policy may apply. If we exercise this right, we will do so at our own expense.

    **E.**    We will not defend any "suit", or pay any attorney fees or litigation expenses including, without limitation, the expenses described in Paragraph C. above that accrue after the applicable Limits of Insurance of this policy have been exhausted by the payment of loss and we will have the right to withdraw from the further defense of such "suit" by tendering control of said defense to an "insured".

<div align="center">*    *    *</div>

## IV.    CONDITIONS

…

    **B.**    **Loss Conditions**

        …

        **1.**    **Duties in the Event of an Occurrence, Claim or Suit**

            …

            e.    No "insured" will, except at that "insured's" own cost, voluntarily make a payment, assume any obligation or incur any expense, other than for first aid, without our consent.

<div align="center">*    *    *</div>

## V.    DEFINITIONS

…

**23.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage", or "personal and advertising injury" to which this policy applies are alleged. "Suit" includes:

    a.    An arbitration proceeding in which such damages are claimed and to which the "insured" must submit or does submit with our consent; or

    b.    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the "insured" submits with our consent.

<div align="center">*    *    *</div>

## PUNITIVE OR EXEMPLARY DAMAGES

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

…

I. Paragraph A. of IV. CONDITIONS is amended to include the following additional condition:

Punitive or Exemplary Damages

Punitive or exemplary damages that are awarded against an "insured" in a judgment that also awards compensatory damages covered by this policy shall be covered where insurable under applicable law, which shall be liberally construed in favor of insurability of such punitive or exemplary damages, subject to all other terms, conditions, definitions, and exclusions of this policy, including Exclusion B.1.a. Expected or Intended Injury.

Coverage for such punitive or exemplary damages shall be subject to, and not in addition to, the limits of insurance set forth in Item 3. of the Declarations.

Notwithstanding the above, this policy does not provide coverage for any civil or criminal fines or penalties imposed by any federal, state or local governmental agency, body or authority. For the purpose of this provision, "federal, state, or local government body or authority" shall not include a court of law.

\*       \*       \*

## POLLUTION EXCLUSION AMENDATORY – NAMED PERIL AND TIME ELEMENT (INCL. MINIMUM RETAINED LIMIT)

I.      The Pollution Exclusion in Subparagraph f. is deleted and replaced with the following.

**Pollution**

This policy does not provide coverage for:

1.      Any "bodily injury", "property damage", or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" anywhere at any time;

2.      Any loss, cost or expense arising out of any request, demand, order or statutory or regulatory requirement that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or

neutralize, or in any way respond to, or assess the effects of "pollutants"; or

3.  Any loss, cost or expense arising out of any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

Paragraph (1) above does not apply, however, to "bodily injury" or "property damage":

(a)  Named Peril Arising out of such discharge, dispersal, seepage, migration, release or escape of "pollutants" if caused directly by hostile fire, explosion, lightning, windstorm, flood, earthquake, automatic sprinkler leakage, vandalism or malicious mischief, riot or civil commotion, collision, upset or overturn of any covered "auto" or covered "mobile equipment", railcar; or

…

(c)  Time Element

Arising out of such discharge, dispersal, seepage, migration, release or escape of "pollutants" when all of the following conditions of this subparagraph are met:

a.  It was neither expected nor intended by the "insured". This condition does not apply to a non-routine incident where such discharge, dispersal, seepage, migration, release or escape of "pollutants" was a result of an attempt by the "insured" to mitigate or avoid substantial third party "bodily injury" or "property damage" that could have occurred; and

b.  It first commenced on a demonstrable, specific date during the "policy period"; and

c.  It became known to the "insured" within (20) calendar days of its first commencement; and

d.  It was reported in writing to us within (80) calendar days of its first commencement becoming known to the insured's General Counsel or head of environmental health and safety group, which written notification shall include all of the following available information with respect to the discharge, dispersal, seepage, migration, release or escape of "pollutants" being reported to us:

      i.      where it took place;

      ii.     how it occurred;

      iii.    the circumstances under which the "insured" first became aware of it;

      iv.    its nature and duration; and

      v.     the property and environment impacted by it; and

    e.     Reasonable effort was expended by the "insured" to terminate the discharge, dispersal, seepage, migration, release or escape of "pollutants" as soon as conditions permitted.

<div align="center">*     *     *</div>

28.     The National Fire & Marine Policy reflects various different retained limits applicable in relation to different types of claims. Relevant here, the National Fire & Marine Policy reflects a $10 million retained limit, which is eroded by the payment of damages only, applicable to coverage under the endorsement titled "POLLUTION EXCLUSION AMENDATORY – NAMED PERIL AND TIME ELEMENT" (the "National Fire & Marine Pollution Endorsement").

### ii.    The Berkley Policy

29.     Berkley issued to Lubrizol a Commercial Excess Liability Policy under number CEX09600127-06 for the period of March 15, 2019 to March 15, 2020 (the "Berkley Policy"). The Berkley Policy provides in relevant part:

**SECTION I – COVERAGES**

**1.**    **Insuring Agreement**

    **a.**    We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "injury or damage" to which insurance provided under this Coverage Part applies. We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling

<div align="center">10</div>

underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

We will have the right and duty to defend the insured against any suit seeking damages for such "injury or damage" when the applicable limits of "controlling underlying insurance" have been exhausted in accordance with the provisions of such "controlling underlying insurance".

When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other suit seeking damages for "injury or damage".  However, we will have no duty to defend the insured against any suit seeking damages for which insurance under this policy does not apply.  At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

At our discretion, we may investigate any "event" that may involve this insurance and settle any resultant claim or suit, for which we have the duty to defend.

But:

(1)    The amount we will pay for "ultimate net loss" is limited as described in Section II – Limits Of Insurance; and

(2)    Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under this Coverage Part.  However, if the policy of "controlling underlying insurance" specifies that limits are reduced by defense expenses, our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of defense expenses, judgments or settlements under this Coverage Part.

…

**2.    Exclusions**

The following exclusions, and any other exclusions added by endorsement, apply to this Coverage Part. In addition, the exclusions applicable to any "controlling underlying insurance" apply to this insurance unless superseded by the following exclusions, or superseded by any other exclusions added by endorsement to this Coverage Part.  Insurance provided under this Coverage Part does not apply to:

…

    **c.**    **Pollution**

        (1)    "Injury or damage" which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

        (2)    Any loss, cost or expense arising out of any:

            (a)    Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

            (b)    Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

                    This exclusion does not apply to the extent that valid "controlling underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "injury or damage".

                *     *     *

## SECTION III – CONDITIONS

The following conditions apply. In addition, the conditions applicable to any "controlling underlying insurance" are also applicable to the coverage provided under this insurance unless superseded by the following conditions.

…

**3.**    **Duties In The Event Of An Event, Claim Or Suit**

    …

    d.    No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

                *     *     *

**SECTION IV – DEFINITIONS**

The definitions applicable to any "controlling underlying insurance" also apply to this insurance. In addition, the following definitions apply.

…

6.      "Ultimate net loss" means the total sum, after reduction for recoveries, or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of:

      a.      Settlements, judgments, binding arbitration; or

      b.      Other binding alternate dispute resolution proceeding entered into with our consent.

      "Ultimate net loss" includes defense expenses if the "controlling underlying insurance" specifies that limits are reduced by defense expenses.

\*       \*       \*

**FOLLOWING FORM COVERAGE ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies Insurance provided under the following coverage part:

COMMERCIAL EXCESS LIABILITY COVERAGE PART

It is agreed that this insurance is subject to the same Insuring Agreements, Exclusions, Definitions and

Conditions as contained in the following described policy:

**COMPANY:** National Fire & Marine Insurance Company

**POLICY NUMBER: 42-RLO-100184-03**

The foregoing shall not apply to the following stated in this policy:

1.      Limits of Insurance

2.      Policy Period

3.      Premium

4.      Schedule of Underlying Insurance

5.      Pollution Exclusion

6.      Asbestos Exclusion

7.      Nuclear Energy Liability Exclusion

8.      Any Exclusion specifically added to this Policy by Endorsement

9.      Cancellation Provision.

<div align="center">*      *      *</div>

**C.     Erosion of the National Fire & Marine Policy**

30.     Lubrizol has voluntarily made payments to claimants that purportedly suffered losses due to claimed pollution that is alleged to have resulted from the Rouen Fire, despite that there has not yet been any finding of liability against Lubrizol.

31.     Voluntary payments are not embraced by the National Fire & Marine Policy, unless National Fire & Marine consented to Lubrizol's voluntary payments.

32.     To the extent National Fire & Marine consented to Lubrizol's voluntary payments, and the payments by Lubrizol otherwise represent covered sums under the National Fire & Marine Policy, it is reasonably likely that the claims arising out of the Rouen Fire, including in relation to the payment of alleged pollution damages, will exhaust the National Fire & Marine Policy.

33.     Upon information and belief, National Fire & Marine has reimbursed Lubrizol over $20 million for Lubrizol's voluntary payments to date, nearly exhausting the $25 million limit of the National Fire & Marine Policy, with hundreds of claims yet to be resolved.

34.     Lubrizol claims that the Berkley Policy responds to the alleged pollution damages resulting from the Rouen Fire upon exhaustion of the National Fire & Marine Policy.

35.     While Lubrizol has not yet presented a formal claim to Berkley, the circumstances, including imminent exhaustion of the National Fire & Marine Policy, indicate that Lubrizol will soon formally tender claims arising from the Rouen Fire to Berkley.  Stated differently, there is

<div align="center">14</div>

not an issue of *if* Lubrizol will present formal claims arising out of the Rouen Fire to Berkley to defend or indemnify under the Berkley Policy, but rather simply *when* Lubrizol will do so.

**D.      Reservation of Rights Under the Berkley Policy and Berkley's Coverage Position**

36.     On or about September 4, 2020, Berkley issued a letter to Lubrizol, notifying Lubrizol of certain limitations to coverage under the Berkley Policy and reserving all rights under the Berkley Policy in relation to purported damages resulting from the Rouen Fire and the claimed, consequent pollution damage.

37.     The September 4, 2020 letter informed Lubrizol that operation of the "Following Form Coverage Endorsement" and "Pollution Exclusion" in the Berkley Policy removed coverage under the Berkley Policy for any pollution-related claims, including that arise out of the Rouen Fire.

38.     The Berkley Policy's "Pollution Exclusion," as applicable through the "Following Form Coverage Endorsement" to the Berkley Policy, excludes coverage for the pollution-related claims that Lubrizol has been paying, and continues to pay, to claimants in relation to the Rouen Fire.

39.     The September 4, 2020 letter also informed Lubrizol that the Berkley Policy incorporated certain applicable exclusions present in the National Fire & Marine Policy, including the "Damage to Property" exclusion and the "Damage to 'Your Product'" exclusion, which are applicable to the Berkley Policy through the "Following Form Coverage Endorsement."

40.     The September 4, 2020 letter also informed Lubrizol that, through incorporation of the "Punitive or Exemplary Damages" endorsement in the National Fire & Marine Policy, which applies through operation of the "Following Form Coverage Endorsement" to the Berkley Policy,

that the Berkley Policy excludes coverage for "civil or criminal fines or penalties imposed by any federal, state or local governmental agency, body or authority."

41.    Lubrizol disagrees with Berkley's position and contends that the "Following Form Coverage Endorsement" does not make the Berkley Policy's "Pollution Exclusion" operative and/or applicable to exclude coverage for the alleged pollution claims arising out of the Rouen Fire; Lubrizol also contends that the "Damage to Property" and "Damage to Your Product" exclusions do not preclude coverage in relation to the Rouen Fire, and that the "Punitive or Exemplary Damages" endorsement does not apply.

42.    On or about March 2, 2021, Berkley issued a supplemental letter to Lubrizol, notifying Lubrizol of additional limitations to coverage under the Berkley Policy and reserving all rights under the Berkley Policy in relation to damages resulting from the Rouen Fire, including the claimed pollution damages.

43.    The March 2, 2021 letter informed Lubrizol that voluntary payments to claimants to which Berkley does not expressly consent are not covered under the Berkley Policy, and may forfeit any coverage under the Berkley Policy, even assuming proper exhaustion of the National Fire & Marine Policy.

44.    Lubrizol disagrees with Berkley's position and contends that payments made by it in relation to the Rouen Fire are covered under the Berkley Policy, even if Berkley did not consent to such payments, even assuming proper exhaustion of the National Fire & Marine Policy.

**DECLARATORY RELIEF – COUNT I**

45.    Berkley incorporates the allegations contained within paragraphs 1 through 44 above as if fully set forth here.

46.     Berkley contends that it has no duty to provide indemnity to Lubrizol in relation to any pollution-related claims arising out of the Rouen Fire based on application of the "Pollution Exclusion" in the Berkley Policy.

47.     Lubrizol disagrees and contends that, upon exhaustion of the National Fire & Marine Policy, Berkley is obligated to indemnify Lubrizol for pollution-related claims arising out of the Rouen Fire.

48.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

## DECLARATORY RELIEF – COUNT II

49.     Berkley incorporates the allegations contained within paragraphs 1 through 48 above as if fully set forth here.

550.    Subject to the proper exhaustion of the National Fire & Marine Policy, as well as any other applicable insurance that is primary to the Berkley Policy, the Berkley Policy potentially applies to obligate Berkley to provide a defense to a potentially covered "suit seeking damages" against Lubrizol.

51.     The proceeding under Article 145 of the French Civil Procedure Code that Lubrizol itself initiated does not reflect a "suit seeking damages."

52.     Further, Lubrizol's adjustment and administration of voluntary payments to claimants do not reflect a "suit seeking damages."

53.     Consequently, Berkley has no obligation to provide a defense to Lubrizol in relation to the Article 145 proceeding or in relation to its administration of voluntary payments.

54.     Lubrizol disagrees and contends that Berkley has an immediate obligation to provide a defense to Lubrizol upon exhaustion of the National Fire & Marine Policy.

55.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

## DECLARATORY RELIEF – COUNT III

56.     Berkley incorporates the allegations contained within paragraphs 1 through 55 above as if fully set forth here.

57.     Berkley contends that it has no duty to provide indemnity to Lubrizol in relation to any damage to property owned, rented or occupied by Lubrizol, in the care, custody or control of Lubrizol, or loaned to Lubrizol due to operation of exclusion "j.", "Damage to Property," in the National Fire & Marine Policy, incorporated into the Berkley Policy through operation of the "Following Form Coverage Endorsement."  Further, Berkley contends that it has no duty to provide indemnity to Lubrizol in relation to damage to any real property as a consequence of Lubrizol's operations on that property, also due to operation of exclusion "j.", "Damage to Property," in the National Fire & Marine Policy, incorporated into the Berkley Policy through operation of the "Following Form Coverage Endorsement."

58.     Upon information and belief, Lubrizol disagrees and contends that, subject to exhaustion of the National Fire & Marine Policy, Berkley is obligated to indemnify Lubrizol in relation to any such property damage claims arising out of the Rouen Fire.

59.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

**DECLARATORY RELIEF – COUNT IV**

60.     Berkley incorporates the allegations contained within paragraphs 1 through 59 above as if fully set forth here.

61.     Berkley contends that it has no duty to provide indemnity to Lubrizol in relation to any damage to Lubrizol's products due to operation of exclusion "k.", "Damage to 'Your Product'" in the National Fire & Marine Policy, incorporated into the Berkley Policy through operation of the "Following Form Coverage Endorsement."

62.     Upon information and belief, Lubrizol disagrees and contends that Berkley is obligated, subject to exhaustion of the National Fire & Marine Policy, to indemnify Lubrizol in relation damage to its products arising out of the Rouen Fire.

63.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

**DECLARATORY RELIEF – COUNT V**

64.     Berkley incorporates the allegations contained within paragraphs 1 through 63 above as if fully set forth here.

65.     Berkley contends that it has no duty to provide indemnity to Lubrizol in relation to any civil or criminal fines or penalties arising out of the Rouen Fire due to operation of the "Punitive or Exemplary Damages" endorsement in the National Fire & Marine Policy, incorporated into the Berkley Policy through operation of the "Following Form Coverage Endorsement."

66.     Upon information and belief, Lubrizol disagrees and contends that Berkley is obligated, subject to exhaustion of the National Fire & Marine Policy, to indemnify Lubrizol in civil or criminal fines or penalties arising out of the Rouen Fire.

67.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

<div align="center">

**DECLARATORY RELIEF – COUNT VI**

</div>

68.     Berkley incorporates the allegations contained within paragraphs 1 through 67 above as if fully set forth here.

69.     Berkley contends that payments made to claimants arising out of the Rouen Fire that are voluntary, and without Berkley's consent, are not covered under the Berkley Policy. Lubrizol disagrees and contends that, upon exhaustion of the National Fire & Marine Policy, Berkley is obligated to indemnify Lubrizol in relation to amounts it voluntarily pays to claimants for claims arising out of the Rouen Fire, even if Berkley has not consented to such payments.

70.     An actual and justiciable controversy has thus arisen between Berkley and Lubrizol. The controversy is ripe for resolution through a declaratory judgment, which will afford complete relief between Berkley and Lubrizol.

<div align="center">

**PRAYER FOR RELIEF**

</div>

WHEREFORE, Berkley asks that the Court:

A.     Adjudicate and determine the rights and obligations of the parties under the Berkley Policy as set forth herein;

B.      Find and declare that Berkley has no obligation to indemnify Lubrizol in relation to claims arising out of, or related to, pollution resulting from the Rouen Fire because the "Pollution Exclusion" in the Berkley Policy excludes coverage for pollution-related claims;

C.      Find and declare that Berkley has no obligation to defend Lubrizol in relation to the Article 145 proceeding or in in relation to Lubrizol's administration of voluntary payments to claimants;

D.      Find and declare that Berkley has no obligation to indemnify Lubrizol in relation to damage to property owned, rented or occupied by Lubrizol, in the care, custody or control of Lubrizol, or loaned to Lubrizol because the "Damage to Property" exclusion in the National Fire & Marine Policy, incorporated in the Berkley Policy, excludes such coverage;

E.      Find and declare that Berkley has no obligation to indemnify Lubrizol in relation to damage to Lubrizol's own products because the "Damage to 'Your Product'" exclusion in the National Fire & Marine Policy, incorporated in the Berkley Policy, excludes such coverage;

F.      Find and declare that Berkley has no obligation to indemnify Lubrizol in relation to any civil or criminal fines or penalties arising out of the Rouen Fire because the "Punitive or Exemplary Damages" endorsement in the National Fire & Marine Policy, incorporated in the Berkley Policy, excludes such coverage; and

G.      Find and declare that Berkley has no obligation to indemnify Lubrizol in relation to claims arising out of, or related to the Rouen Fire because Berkley is not obligated to indemnify in relation to voluntary payments made by Lubrizol without Berkley's consent;

H.      Grant Berkley any and all further relief that this Court may deem equitable and just.

Dated:  May 16, 2022

<div style="margin-left:40%">

s/ Patrick Fredette
_____

Patrick Fredette
Christopher Ryan
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
(513) 762-7520

*Attorneys for Berkley National Insurance
    Corporation*

</div>

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(b) of the Federal Rules of Civil

Procedure.


Dated:  May 16, 2022


<div style="margin-left:50%;">

s/ Patrick Fredette
_____
Patrick Fredette
Christopher Ryan
McCORMICK, BARSTOW, SHEPPARD,
WAYTE & CARRUTH LLP
Scripps Center, Suite 1050
312 Walnut Street
Cincinnati, Ohio 45202
(513) 762-7520

*Attorneys for Berkley National Insurance*
    *Corporation*

</div>